```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
EMILIO FUSCO,

                        Petitioner,              15-cv-9354 (PKC)
                                                 09-cr-01239 (PKC)
        -against-
                                                 OPINION AND
                                                 ORDER
UNITED STATES OF AMERICA,

                        Respondent.
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

Petitioner Emilio Fusco moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For reasons that will be explained, Fusco's motion will be denied.

BACKGROUND

Fusco was charged in five counts of a Superseding Indictment, S4 09 Cr. 1239 (PKC) (the "Indictment"). A jury found him guilty of Count One, racketeering conspiracy in violation of 18 U.S.C. § 1962(d), Count Three, extortion conspiracy in violation of 18 U.S.C. § 1951, and Count Five, interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952. He was acquitted of Count Two, racketeering in violation of 18 U.S.C. § 1962(c), and Count Four, extortion in violation of 18 U.S.C. § 1951. With respect to Count Two, a conviction required the jury to unanimously find at least two predicate acts of racketeering proven beyond a reasonable doubt. The Indictment alleged the following predicate acts: the murders or conspiracies to murder Adolfo Bruno and Gary Westerman, extortion or conspiracy to extort a local business owner, and conspiracy to distribute marijuana. Of the four predicate acts, the jury only found the conspiracy to distribute marijuana proven beyond a reasonable doubt. The Court denied Fusco's motion for a judgment of acquittal or a new trial on Counts Three, Five, and the

predicate racketeering act of conspiracy to distribute marijuana related to Count Two. (Mem. and Order of Sept. 17, 2012; Crim. Doc. 286).

The sentencing hearing lasted two days. At the conclusion of the hearing, this Court concluded, by a preponderance of the evidence, that the government had proven that Fusco had participated in the Bruno and Westerman murders. Accordingly, it determined that Fusco's adjusted offense level under the Guidelines was 45 and his Criminal History Category was III. The resulting Guidelines range was life imprisonment, which was reduced to 45 years' imprisonment (the statutory maximum). This Court sentenced Fusco to 300 months' imprisonment (25 years) and ordered him to forfeit $260,000. On March 21, 2014, the Second Circuit affirmed the conviction and sentence. United States v. Fusco, 560 F. App'x 43 (2d Cir. 2014) (summary order). The Supreme Court of the United States denied Fusco's petition for a writ of certiorari on December 1, 2014. Fusco v. United States, 135 S. Ct. 730 (2014). Fusco's present motion was timely filed within a year of the denial of the writ.

LEGAL STANDARD

A person in federal custody may collaterally attack a final judgment in a criminal case based on "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 589–90 (2d Cir. 1996). "[A] defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal . . . . An exception applies, however, if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)). When a petitioner attempts to establish "cause" by asserting ineffective assistance

of counsel, courts apply the two prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Sapia v. United States, 433 F.3d 212, 218 (2d Cir. 2005). Additionally, "a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) (citation omitted). However, § 2255 does not bar consideration of a claim where an "intervening change in the law" has occurred. Underwood v. United States, 15 F.3d 16, 18 (2d Cir. 1993).

DISCUSSION

On appeal to the Second Circuit, Fusco argued that "his prosecution and sentencing violated the Extradition Treaty between the Government[s] of the United States and . . . the Italian Republic and the rule of specialty," "the District Court improperly considered acquitted conduct in determining his sentence," "the District Court constructively amended the indictment," "the evidence was insufficient for a conviction," and "the indictment was multiplicitous." Fusco, 560 F. App'x at 45. He also raised three ineffective assistance of counsel arguments relating to the Extradition Treaty and the Rule of Specialty, the purported constructive amendment of the Indictment, and the purported multiplicity of counts. Id. at 46. The Second Circuit considered Fusco's arguments and affirmed his judgment of conviction. The Court reached and denied the ineffective assistance claims because it concluded that it was "beyond any doubt" that Fusco's trial counsel was not ineffective in failing to raise the issues. Id.

Fusco now puts forth multiple additional grounds for relief under § 2255. First, Fusco argues that both his trial counsel and his appellate counsel were ineffective for numerous reasons. Second, he asserts that the Court based its sentencing determination principally on acquitted conduct—namely, the Bruno and Westerman murders. On this ground, Fusco urges the Court to consider the following cases, which were decided after his conviction and sentence

became final: United States v. Pimentel-Lopez, 859 F.3d 1134 (9th Cir. 2016) and Nelson v. Colorado, 137 S. Ct. 1249 (2017).[1]  Third, he argues that, under Rosemond v. United States, 134 S. Ct. 1240 (2014), the Court erred when instructing the jury on Count Five of the Indictment. The Court will address these grounds in turn.

    I.        Fusco's Ineffective Assistance of Counsel Claims Fail Under *Strickland*

Fusco asserts that both his trial counsel and appellate counsel were ineffective. Despite the numerosity of Fusco's grievances, his ineffective assistance claims fail the Strickland test as to both his trial and appellate counsel.

Under Strickland v. Washington, 466 U.S. 668, 688–90 (1984), a defendant asserting ineffective assistance of counsel must first overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" by presenting evidence that counsel's performance fell below an "objective standard of reasonableness" as measured by "prevailing professional norms."  Second, the defendant must prove "actual prejudice" by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 692, 694.  It is insufficient to show that counsel's errors had "some conceivable effect" on the outcome. Id. at 693.  Instead, the defendant must show "a probability sufficient to undermine confidence in the outcome." Id. at 694.

---

[1] Fusco also asked that the Court await the Supreme Court's ruling on a petition for a writ of certiorari in Siegelman v. United States, 136 S. Ct. 798 (2016), before rendering an opinion on the propriety of considering acquitted conduct during his sentencing.  The Supreme Court's decision, Fusco argued, could constitute an "intervening change in the law" regarding the constitutionality of considering acquitted conduct during sentencing.  Because the Supreme Court denied certiorari in Siegelman on January 11, 2016, the Court need not address this claim.

    a.   <u>Fusco's Trial Counsel Did Not Render Ineffective Assistance</u>

Fusco argues that his retained trial counsel, an experienced federal criminal practitioner, was ineffective during trial because he (1) did not object to the jury charge relating to Count One or Count Five of the Indictment, (2) did not ask for "Special Interrogatories" on the predicate acts underlying Count One of the Indictment, and (3) did not obtain testimony from Mario Manzi, Sandra Berardi, or Jimmy Santaniello.  He further argues that trial counsel was ineffective during the sentencing proceeding because he (1) did not obtain a sworn affidavit from Mario Manzi, and (2) was not prepared for a <u>Fatico</u> hearing.

The Court has considered these alleged errors individually and in their totality and holds that trial counsel did not render ineffective assistance.  To the contrary, Fusco's counsel's performance at both trial and sentencing was exemplary and very effective.  His performance resulted in acquittals on two of the five counts and a sentence 20 years below the 45 year statutory maximum that capped the Guidelines.

    i.   <u>Trial Counsel Did Not Render Ineffective Assistance During Trial</u>

First, Fusco argues that trial counsel was deficient in failing to object to the jury charges on Counts One and Five, which he alleges were overbroad.  On Count Five (interstate travel in aid of racketeering), the Court instructed the jury based on language from 18 U.S.C. §§ 1952(a)(1), (2) and (3) when the Indictment only charged him with violations of §§ 1952(a)(1) and (3).  Count One of the Indictment (racketeering conspiracy) listed extortion in violation of 18 U.S.C. § 1952 as a predicate act.  Fusco argues that the overbroad instruction could have caused the jury to convict him of Count Five based on a violation of § 1952(a)(2), which was not charged in the Indictment.  Similarly, he argues the jury could have also convicted him of Count One based on a finding that he committed the predicate act of violating § 1952(a)(2).

Even if these alleged errors amounted to deficient performance under the first prong of Strickland, Fusco did not suffer "actual prejudice."  On direct appeal, Fusco argued that the jury charge on Count Five "constructively amended" the Indictment.  The Second Circuit held that there was no "'substantial likelihood' that the jury relied on § 1952(a)(2) rather than § 1952(a)(1) or § 1952(a)(3) in convicting him of interstate travel in aid of racketeering."[2]  Fusco, 560 F. App'x at 45.  It follows that there is no substantial likelihood that the jury convicted Fusco of Count One based on the predicate act of violating § 1952(a)(2).  Therefore, even if counsel had objected to the jury charge on Counts One or Five, the Court holds that there is no "reasonable probability" that the result of Fusco's trial or sentencing would have been any different.

Second, Fusco argues that counsel should have asked the Court to include "Special Interrogatories" on the verdict form so that the jury could make factual findings on each of the predicate offenses enumerated in Count One, charging participation in a RICO conspiracy.  Without these interrogatories, he argues, the sentencing Court did not know which predicate acts the jury found to support a conviction on the conspiracy count.  Even if counsel had requested interrogatories, this Court was free to reject that request because the decision whether to use special interrogatories in a criminal case is committed "to the broad discretion of the district court."  See United States v. Ogando, 968 F.2d 146, 149 (2d Cir. 1992).  Moreover, regardless of the answers to these hypothesized "Special Interrogatories," the government would be entitled to urge the Court to find that the predicate acts not proven beyond a reasonable doubt to the jury were still proven by a preponderance of the evidence.  There is no reasonable probability that the

---

[2] The Second Circuit reasoned that "[t]he evidence at trial supported Fusco's interstate travel conviction based on § 1952(a)(1) or § 1952(a)(3), intent to distribute the proceeds of or to promote, manage, establish, carry on and facilitate gambling and extortion. By contrast, as shown by Fusco's acquittal of the substantive RICO charge and its predicate murder acts, the evidence did not support a conviction based on § 1952(a)(2)." Fusco, 560 F. App'x at 45.

Court's preponderance of the evidence determination would have changed had the Court allowed special interrogatories and the jury made explicit findings of fact under a beyond a reasonable doubt standard. Thus, the failure to ask for interrogatories did not prejudice Fusco.

Third, Fusco argues that trial counsel should have obtained testimony from three additional witnesses: Mario Manzi, Sandra Berardi, and Jimmy Santaniello. Specifically he argues that Manzi, who allegedly delivered money to Fusco's residence while Fusco was in prison, could have testified to the contrary (thereby "undermining" the government's evidence on the extortion conspiracy count); Berardi could have testified about her affair with Anthony Arillotta, a government cooperating witness, and about how Gary Westerman smoked cigarettes (thereby introducing an alternate explanation for the cigarettes found near Westerman's body); and Santaniello could have testified that Fusco did not extort him. Under Strickland's first prong, an attorney's performance is not deficient merely because the defendant disagrees with the attorney's strategy. United States v. Sanchez, 790 F.2d 245, 253 (2d Cir. 1986). Disagreements regarding tactical decisions do not generally amount to deficient performance. United Stated v. Best, 219 F.3d 192, 201–02 (2d Cir. 2000) (citation omitted). The decision to call or not to call witnesses at trial is "a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987).

Trial counsel's decision not to call these witnesses during trial did not amount to deficient performance under the first prong of Strickland. During trial, counsel presented testimony from four witnesses and other evidence that rebutted the charges of extortion and extortion conspiracy and that spoke to Berardi's relationship with Arillotta and Westerman's smoking habit. Trial counsel also provided Manzi and Berardi with subpoenas to testify at trial.[3]

---

[3] It is unclear from the record whether or not trial counsel provided a subpoena to Santaniello to testify at trial.

With respect to Manzi, trial counsel reached out to Manzi's attorney and was informed that Manzi would assert a Fifth Amendment privilege if called to testify. (Oct. 10-11, 2012, Tr. 56). With respect to Santaniello, the government was informed by Santaniello's counsel that Santaniello would also assert his Fifth Amendment privilege if called to testify. (Gov't Brief; Civ. Doc. 14 at 25 n.7). It is pure speculation that had Fusco's counsel compelled them to appear, they would not have asserted a Fifth Amendment privilege. Even if that were true, a reasonable and prudent trial lawyer would consider it strategically unwise to call a witness on the defense case without reliable knowledge of the likely content of the witness's testimony and a means to impeach the witness if he or she deviated from the expected testimony. Counsel's performance did not fall below an "objective standard of reasonableness," but was instead a "tactical decision[]." See Strickland, 466 U.S. at 688-89. Fusco's grievance appears to be merely that he disagrees with that decision. Such disagreement does not support a finding of deficient performance.

> ii. Trial Counsel Did Not Render Ineffective Assistance During the Sentencing Proceeding

Fusco raises two issues with respect to counsel's performance at sentencing. First, he argues that counsel should have obtained a sworn affidavit from Mario Manzi, from whom counsel only obtained an unsworn "Voluntary Statement." Second, he argues that counsel was not prepared for a Fatico hearing. This Court holds that any failure to obtain a sworn affidavit from Mario Manzi did not prejudice Fusco, and, contrary to Fusco's assertion, trial counsel was very well-prepared for the sentencing proceeding.

1. Failure to Obtain A Sworn Statement From Mario Manzi's Did Not Prejudice Fusco

Fusco argues that a sworn statement from Manzi "may well have caused this Court to conclude that Mr. Fusco's involvement with a purported extortion scheme had not been established by a preponderance of the evidence." In the statement, Manzi denied delivering money to Fusco's wife while Fusco was incarcerated. (Civ. Doc. 5-11 at 8). Fusco's attorney obtained this statement after Fusco's trial when Manzi himself reached out to the Fusco family offering to sign an affidavit. (Oct. 10-11, 2012, Tr. 56). Though Manzi's statement was not given under oath and did not amount to an affidavit or a declaration, it was signed by Manzi and notarized. (Civ. Doc. 5-11 at 8). Further, as this Court noted on the record, if Manzi's statement were false, he "might be subject to prosecution for making a false statement within the purview of a federal proceeding." (Oct. 10-11, 2012, Tr. 59). The government did not object to the Court's consideration of the statement. Ultimately, the Court did in fact take the statement into consideration in determining Fusco's sentence. (Id. at 58). Had the statement been in the form of a sworn affidavit, any additional weight the Court would have given the statement would not have outweighed the significant evidence supporting Fusco's involvement in an extortion conspiracy. As such, there is no reasonable probability that the Court's sentencing determination would have changed. There is no reason to conclude that the unsworn nature of the statement was anything other than a decision exclusively made by Manzi and his attorney. Fusco's lawyer had no power to compel a sworn statement. But in any event, the failure to obtain a sworn statement did not prejudice Fusco.

2. Trial Counsel Was Not Unprepared During Sentencing

Trial counsel's performance during sentencing rose far above Strickland's "objective standard of reasonableness." In the government's sentencing submission, it urged that

Fusco's participation in the murders of Westerman and Bruno, conduct for which Fusco was acquitted as a predicate act on Count Two, was relevant conduct on the counts of conviction. It further urged that Fusco's participation in these murders had been proven by a preponderance of the evidence. In response, Fusco's counsel submitted a 27-page, single-space sentencing memorandum (with multiple exhibits), which meticulously presented his client's factual and legal rebuttal and passionately urged a below Guidelines sentence. (Crim. Doc. 287). Specifically, with regard to the Westerman murder, counsel asserted that (1) the testimony of government cooperator Arillotta was incredible; (2) Fusco would never have participated in a murder with the Geas brothers because the brothers robbed an alleged criminal associate of Fusco's; (3) there was no corroboration; (4) Fusco lacked the motivation to kill Westerman; and (5) an excluded hearsay statement by Fred Geas did not mention Fusco.

With regard to the Bruno murder, Fusco's counsel argued that (1) testimony by government cooperator Frankie Roche was contradicted by his testimony in a prior trial before this Court and by the grand jury testimony of his roommate, Billy Johnston; (2) there were plausible reasons for Bruno's murder other than the theory proffered by the government; (3) the testimony of Arillotta was unreliable; (4) it was unlikely that Fusco would participate in a murder with the Geas brothers; (5) there was no corroboration; and (6) the testimony of government cooperator Felix Tranghese suggested that Fusco was not willing or able to comply with Arthur Nigro's order to kill Bruno because Fusco would be leaving for prison shortly on another case.

Trial counsel also raised numerous objections to the facts set forth in the Presentence Report ("PSR"). The Court conducted a two-day hearing on the parties' objections to the PSR. On the present motion, Fusco makes much of a statement made at the first day of the

two-day sentencing hearing. The Court asked if Fusco wanted an "evidentiary hearing" on "any of [Fusco's] objections" to the PSR. (Oct. 10-11, 2012, Tr. 23). Fusco's counsel answered in the affirmative. (Id.). The government, the party with the burden of proof, stated that it would rest exclusively on the record of the trial against Fusco and the earlier trial against his co-conspirators. (Id.). The Court then invited Fusco's counsel to call his first witness and Fusco's counsel responded that he did not have any witnesses to present and that he "was not prepared to go forward today." (Id. at 24). It is this statement that forms an important part of Fusco's argument of ineffectiveness.[4] But context matters, and the full context of the sentencing proceeding demonstrates that Fusco's counsel was extremely well prepared.

   Fusco's lawyer knew the record and meticulously laid out an attack on the government's evidence as to the Westerman and Bruno murders in his written sentencing submission. The lawyer appearing for Fusco at sentencing was the same lawyer who successfully defended him at trial against predicate acts charging that Fusco participated in the two murders. At sentencing, counsel orally highlighted helpful testimony from the government's DNA expert that there was no link between Fusco and cigarettes found in the location where Westerman was buried. (Id. at 25). He also pointed out with respect to the Bruno murder that the timing of a phone call at "5:47 on November 23" between two co-conspirators and 3500 material relating to Billy Johnston made the government's version of events unreliable. (Id. at 26-32).

   Between the first and second day of the sentencing proceeding, Fusco's lawyer helpfully supplied the Court with a letter enclosing certain grand jury testimony of Billy

---

[4] When the Court reiterated the opportunity to introduce evidence or highlight evidence, counsel asked for a moment with his client. (Oct. 10-11, 2012, Tr. 24.) He then responded that he had nothing further on the pending objection. (Id.).

Johnston, discovery materials relating to Johnston's proffer to the government, and an excerpt from the first trial against Fusco's co-conspirators. (Id. at 36). Counsel pointed out that despite five or six attempts by an investigator to serve Billy Johnston, he was not to be found. (Id. at 48). Fusco's counsel continued to point to evidence substantiating his argument that the government could not prove Fusco's participation in the Bruno murder. (Id. at 36-42, 47, 49-52). With regard to other objections, Fusco's counsel also offered Mario Manzi's previously discussed "Voluntary Statement," wherein Manzi denied delivering money to Fusco's residence while Fusco was in prison. (Id. at 56-57). Counsel also orally pointed out that his sentencing memorandum attached a bill of sale for Fusco's dumpster business showing that it was sold to Jimmy Santaniello. (Id. at 62).

    Several of Fusco's counsel's objections to the PSR were sustained and resulted in changes to the PSR, while several others were not. (Id. at 1-68). The Court ultimately found that Fusco's participation in the murders of Bruno and Westerman had been proven by a preponderance of the credible evidence. (Id. at 78-81, 83-85). The Court announced that it would impose a sentence of 300 months' imprisonment, three years' supervised release, waiver of the fine, and a $300 special assessment and gave its reasons for the proposed sentence. (Id. 105-09). Fusco's counsel objected to the term of imprisonment as unreasonable. (Id. 109). As noted, the sentence was challenged on the direct appeal and was upheld. The transcript of the two-day sentencing hearing demonstrates that, contrary to Fusco's assertion, trial counsel was well-prepared, knowledgeable, energetic, and resourceful in his representation of Fusco throughout the proceeding.

b. <u>Fusco's Appellate Counsel Did Not Render Ineffective Assistance</u>

Fusco alleges that his appellate counsel was ineffective because appellate counsel did not argue (1) that sentencing Fusco based on acquitted conduct violated Fusco's Sixth Amendment right to trial, (2) that the sentencing Court violated Fusco's Sixth Amendment right to trial when it failed to state on the record all of the facts upon which it based Fusco's sentence, (3) that sentencing Fusco based on acquitted conduct violated the Extradition Treaty and the Rule of Specialty, (4) that the sentencing Court violated the Extradition Treaty and the Rule of Specialty when it erroneously instructed the jury on Count Five, and (5) that Fusco's sentence was procedurally or substantively unreasonable.  Essentially, Fusco takes issue with the arguments that his appellate counsel chose to make on direct appeal, asserting that appellate counsel "pursued weak appellate issues instead of significant and obviously stronger appellate issues."

Ineffective assistance of appellate counsel is also measured under the <u>Strickland</u> test.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000).  In this context, appellate counsel is similarly entitled to make strategic decisions.  For example, appellate counsel "need not (and should not) raise every nonfrivolous claim" on appeal.  <u>Id.</u> at 288; <u>Jones v. Barnes</u>, 463 U.S. 745, 753 (1983) ("A brief that raises every colorable issue runs the risk of burying good arguments.").  As a matter of strategy, appellate counsel "may select from among [possible claims] in order to maximize the likelihood of success on appeal."  <u>Robbins</u>, 528 U.S. at 288 (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986)) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.").

This Court holds that appellate counsel's performance was not deficient and, thus, will not reach the question of prejudice. Fusco has not overcome the "strong presumption" that appellate counsel acted within the "wide range of reasonable professional assistance." See Strickland, 466 U.S. at 688–90. Appellate counsel intelligently and capably raised numerous nonfrivolous issues on direct appeal.[5] The claims that Fusco now argues should have been raised are not "clearly stronger" than the claims actually raised. Indeed, some are very similar to the claims that appellate counsel did raise. Specifically, appellate counsel's brief suggests that counsel carefully considered arguments related to the Extradition Treaty, the Rule of Specialty, Fusco's Sixth Amendment right to trial, and the Court's jury instruction on Count Five of the Indictment. Appellate counsel was free to strategically choose among viable claims in order to "maximize the likelihood of success on appeal" and that appears to be what Fusco's appellate counsel did. An exercise of discretion in strategy does not amount to deficient performance under Strickland.

---

[5] As listed in Fusco's § 2255 petition, appellate counsel raised the following grounds on direct appeal:
"[1] Mr. Fusco's prosecution and sentencing violated the Extradition Treaty between the United States and Italy and/or the Rule of Specialty incorporated therein; [2] The sentence imposed on Mr. Fusco violated Apprendi v. New Jersey, 530 U.S. 466 (2000) and its progeny because the district court's "judicial factfinding" with respect to acquitted conduct increased the prescribed sentence for the crimes of conviction; [3] The Indictment was constructively amended with respect to Count 5 (Interstate Travel in Aid of Racketeering in violation of 18 U.S.C. § 1952 and Aiding and Abetting Interstate Travel in Aid of Racketeering in violation of 18 U.S.C. § 2) by including jury instructions related to 18 U.S.C. § 1952(a)(2), a section of that statute not charged in the Indictment; [4] The evidence was insufficient to convict Mr. Fusco on Count 5 of the Indictment (Interstate Travel in Aid of Racketeering in violation of 18 U.S.C. § 1952 and Aiding and Abetting Interstate Travel in Aid of Racketeering in violation of 18 U.S.C. § 2); [5] Count 1 of the Indictment (Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d)) and Count 5 of the Indictment (Interstate Travel in Aid of Racketeering in violation of 18 U.S.C. § 1952 and Aiding and Abetting Interstate Travel in Aid of Racketeering in violation of 18 U.S.C. § 2) were multiplicitous; and [6] Mr. Fusco's trial counsel was ineffective."
(Civ. Doc. 1).

II.     Neither *Pimental-Lopez* nor *Nelson* Warrant § 2255 Relief

Fusco argues United States v. Pimentel-Lopez, 859 F.3d 1134 (9th Cir. 2016) and Nelson v. Colorado, 137 S. Ct. 1249 (2017), which were both decided after the Second Circuit affirmed Fusco's conviction and sentence, constitute "intervening changes in the law" that warrant this Court's consideration.  Specifically, Fusco asserts that both of these cases preclude the Court from considering acquitted conduct when sentencing a defendant.  The Court has reviewed these cases and concludes that neither Pimental-Lopez nor Nelson warrant § 2255 relief.

Pimental-Lopez was decided on July 15, 2016 by the Ninth Circuit.[6]  The decision in Pimental-Lopez is not binding on this Court.  In any case, the Court's sentence does not conflict with the rule set forth in Pimental-Lopez.  In that case, the jury found beyond a reasonable doubt that the defendant possessed "[l]ess than 50 grams" of a controlled substance.  Pimentel-Lopez, 859 F.3d at 1139.  The sentencing court found by a preponderance of the evidence that the defendant possessed more than 50 grams and sentenced the defendant accordingly.  Id. at 1139–40.  The Ninth Circuit held that the sentencing court erred by sentencing the defendant based on a "contradictory finding." Id. at 1141.  In Fusco's case, the jury found that the government failed to prove, beyond a reasonable doubt, that Fusco was involved in the murders of Bruno and Westerman.  During sentencing, this Court found, by a preponderance of the evidence, that Fusco was involved in these murders.  Proof that fails to satisfy the high threshold of "beyond a reasonable doubt" does not necessarily fail to satisfy the

---

[6] Fusco cited to United States v. Pimentel-Lopez, 828 F.3d 1173 (9th Cir. 2016), a three-judge panel opinion, which has since been amended and superseded by United States v. Pimentel-Lopez, 859 F.3d 1134 (9th Cir. 2016).  The amendment does not affect the substance of Fusco's claim.  This Court will cite to the amended opinion throughout.

less rigorous "preponderance of the evidence" standard.  As such, unlike the sentencing court's finding in Pimental-Lopez, this Court's finding did not contradict the jury's finding.

Nelson was decided on January 9, 2017 by the Supreme Court of the United States.  In Nelson, the Court held that certain Colorado statutes violated due process where the statutes required defendants, whose convictions had been reversed, to prove their innocence by clear and convincing evidence before they could receive a refund of costs, fees, and restitution.  137 S. Ct. at 1255 (holding that, after reversal, the presumption of innocence is restored).  This Court's sentence does not conflict with the rule set forth in Nelson.  During sentencing, the Court considered the evidence relating to Fusco's involvement in the Bruno and Westerman murders and made its own factual finding that Fusco was involved in these murders.  In making these findings, the Court, unlike the Colorado statutes, did not presume Fusco guilty, requiring Fusco to prove his innocence.  Thus, Nelson is inapposite.

III.     Fusco's *Rosemond* Claim Is Procedurally Barred

Fusco's claim, based on Rosemond v. United States, 134 S.Ct. 1240 (2014), is procedurally barred because the Second Circuit addressed this claim on direct appeal.  Rosemond was decided while Fusco's direct appeal was pending, but before Fusco's reply brief was due.  Once Rosemond was decided, Fusco submitted his reply brief to the Second Circuit, arguing that this Court erred in instructing the jury on Count Five of the Indictment in light of Rosemond—the same argument he now makes to this Court.  The Second Circuit did not explicitly reference Rosemond in its opinion, but it stated that it had "considered Fusco's remaining arguments and conclude that they are without merit or abandoned."  Fusco, 560 F. App'x at 46.  As such, this claim is procedurally barred.  See Sanin, 252 F.3d at 83 ("[A] § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal.").

CONCLUSION

The Court has considered all of Fusco's arguments, including those not expressly addressed herein, and find them to be without merit. Fusco's motion to vacate, set aside or correct his convictions and/or sentence pursuant to 28 U.S.C. § 2255 is DENIED. The Clerk is directed to enter judgment for the United States and to terminate the motion, (Civ. Docs. 1, 24).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 21, 2018