CLERK US District Court
500 PEArt St CourtHouse
NEW YORK, NY 10007

RE: EMILIO FUSCO v. UNITED States
CASE No. 09-CR-1239 (PKC)

DEAR CLERK OF tHE Court,

Enclosed please FIND PLAINTIFF, EMILIO FUSCO's
PRO SE MOTION pursuant to 18 U.S.C. SECtion 3582(c)(1)(A).
Would you KINDLy FILE SAME and FORWARD ME DOCKET
FOR case and EXHIBIT A-B-C. DUE to My Lock-DOWN
and quarantined THE FACILITY LIMITED THE INMATE TO
MAKE COPIES. WE ARE Currently UNAVAILABE TO Comptures
Copy MAchines ETC. ETC. Thank you for your Assitance.

RESpECtfully SubMitted
EMILIO FUSCO/ ___

6-4-2020        Reg. No. 02689-748
                F.M.C. DEVENS
                P.O. BOX 879
                Ayer MA 01432

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

EMILIO FUSCO,
    PETITIONER

— against —

                                                                 No. 09-cr-1239 (PKC)

UNITED STATES OF AMERICA,
    RESPONDENT


**MOTION FOR COMPASSIONATE RELEASE OR SENTENCE REDUCTION
PURSUANT TO 18 U.S.C. §3583(c)(1)(A).**


Comes now, Petitioner Emilio Fusco, proceeding prose, respectfully moves this

Honorable Court to grant his Motion for compassionate Release or Reduction in Sentence

pursuant to 18 U.S.C. Section 3582(c)(1)(A) in light of the First Step Act of 2018, the

Coronavirus Aid Relief, and Economic Security Act signed into law by the President of the

United States on March 27, 2020 (*hereinafter referred to as* "CARES Act") and U.S.G. Section

1B1.13(d) "Catch All Provision."

1

A.    Introduction

The world is currently in the midst of an unprecedented pandemic.  The Coronavirus ("COVID-19") has paralyzed the entire world.  The disease has spread exponentially, shutting down the economy, schools, jobs, professional sports, and unfortunately, life as we know it.  It has killed almost a hundred thousands of Americans and infect millions more.[1]  At this point, several months into the pandemic, there is still no approved cure, treatment, or vaccine to prevent it.[2] People with pre-existing medical conditions—like Petitioner Emilio Fusco—face a particularly high risk of dying or suffering severe health effects should they contract the disease.

Petitioner moves this Court to reduce his sentence to time served based on the Bureau of Prisons inability to provide medical care to all prisoners who continued to become infected with the coronavirus; his inability to protect himself in a prison setting during the global pandemic; his qualification for release under the First Step Act; and his medical conditions. Petitioners circumstances satisfy the "extraordinary and compelling reasons" standard set out in both 18 U.S.C. §3582(c)(1)(A) and U.S.S.G §1B1.13. In light of these factors in 18 U.S.C.§3553(a), Petitioner moves this Court to reduce his sentence to time served and immediate release under the "compassionate release."

Petitioner is an inmate at the federal detention center in Ayers, Massachusetts. He is in year ten of a twenty-five-year sentence that was well above the recommended sentencing given by probation at the time of Petitioner sentencing. Petitioner has Neutropenia; irregular heartbeat and suffers from shortness of breath. He has been an

---

[1] https://www.worldometers.info/coronavirus/country/us/

[2] *See Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19)*, World Health Organization (Feb. 24, 2020), at 12, https://www.who.int/docs/defaultsource/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf.

upstanding inmate and has shown significant rehabilitation in prison and bettering himself with numerous classes.

The CARES Act was passed into law to ensure the safety of "high risk" inmates whom have a greater chance of death due to the deadly COVID-19 virus. Petitioner suffers from severe medical conditions, including Neutropenia, irregular heartbeat, and shortness of breath. Neutropenia is when a person has a low level of neutrophils.[3] Neutrophils are a type of white blood cell. All white blood cells help the body fight infection.[4] Neutrophils fight infection by destroying harmful bacteria and fungi (yeast) that invade the body.[i5] People who have neutropenia have a higher risk of getting serious infections. This is because they do not have enough neutrophils to kill organisms that cause infection.[6] People with severe or long-lasting neutropenia are most likely to develop an infection.[7] Collectively, Petitioner's medical conditions diminish his capacity to combat the deathly COVID-19 virus and therefore, makes him extremely vulnerable to contracting and dying from COVID-19.

Nothing could be more extraordinary and compelling than this COVID-19 pandemic to Petitioner. The rising statistics—which focus on the non-prison population—become even more gravely concerning when considered in the prison context.[8]  Prisons tightly confined spacings are tinderboxes for infectious disease. The question whether the government can protect inmates from COVID-19 is being answered

---

[3] https://www.cancer.net/coping-with-cancer/physical-emotional-and-social-effects-cancer/managing-physical-side-effects/neutropenia.
[4] https://www.cancer.net/coping-with-cancer/physical-emotional-and-social-effects-cancer/managing-physical-side-effects/neutropenia.
[5] https://www.cancer.net/coping-with-cancer/physical-emotional-and-social-effects-cancer/managing-physical-side-effects/neutropenia.
[6] https://www.cancer.net/coping-with-cancer/physical-emotional-and-social-effects-cancer/managing-physical-side-effects/neutropenia.
[7] https://www.cancer.net/coping-with-cancer/physical-emotional-and-social-effects-cancer/managing-physical-side-effects/neutropenia.
[8] https://www.worldometers.info/coronavirus/country/us/

3

every day, as COVID-19 outbreaks appear in new facilities. Several inmates and

employees have already tested positive for COVID-19 in the federal detention center in

Ayers, Massachusetts- the place of Petitioner's incarceration. After examining the law,

the current circumstances the Petitioner is subjected to with his health conditions during

this COVID-19 pandemic and evaluating all the Petitioner's current time served for the

alleged crimes, it is imperative that the Court reach the inescapable conclusion that

Petitioner must be granted "compassionate release."

The Petitioner satisfied the thirty day requirement for exhaustion of administrative

remedies under 18 U.S.C. §3583(c)(1)(a) of which allows for a modification "upon motion of the

defendant after the defendant has fully exhausted all administrative rights to appeal a failure of

the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of thirty days from

the receipt of such a equestrian by the Warden of the defendant's facility, whichever is earlier."

18 U.S.C. Section 3582(c)(1)(a).

The Petitioner made his initial request for compassionate release on May 08, 2020.

Exhibit A. The Petitioner has been subject to a prison "lock down" for quarantine since May 12,

2020. The Bureau of Prisons cannot meet the basic preventive measures recommended by the

Center for Disease Control ("CDC") to prevent the spread of the COVID-19. The Bureau of

Prisons cannot change the fundamental living conditions the Petitioner and other prisoners are

forced to endure, including living in tight dorm like quarters that do not permit the recommended

"six feet of social distancing" recommended by the CDC and the sharing of unsanitary bathroom

facilities. The Bureau of Prisons cannot separate prisoners cell rooms with other prisoners whom

have organ diseases and the extraordinary circumstances of the coronavirus. Thus, the Petitioner,

whom is considered "high risk" of contracting the virus and dying due to his medical condition

4

that includes a weak immune system is further put in the "high risk" category because of the living conditions and restrictions on the Federal Bureau of Prisons.

### B.  Jurisdiction

Title 18 U.S.C. §3582(c)(1)(A), as amended by the First Step Act, now provides a method for federal defendants to move for compassionate release in their sentencing court. The District Courts "may" reduce a term of imprisonment upon motion of the Bureau of Prisons, or upon motion of the Defendant after the Defendant has exhausted all administrative rights to appeal. A failure of the Bureau of Prisons to bring a motion on the Defendant's behalf, or the lapse of 30 days from the receipt of such a request by the Warden's facility, whichever is earlier, can establish jurisdiction pursuant to 18 U.S.C. §3582 (C) (1) (A). See *United States v. Gray*, 2019 U.S. Dist. LEXIS (7th Dist. 2019).

Prior to the passage of Section 603 of the First Step Act on December 21, 2018, only the Director of the Federal Bureau of Prisons could file a motion for Compassionate Release, "and that very rarely happens." *United State v. Gutierrez* (No. CR05-0217RB, 2019 WL 1472320, AT 1) (D.N.M. April 3, 2019). Section 603 (b) of the First Step Act modified 18 U.S.C. §3582(C)(1)(A), however, with the intent of "increasing the use and transparency of compassionate release." *Id.* (Quoting Pub L. No. 115-391,132 Stat.5194 at 5239).

Pursuant to the First Step Act, the Court has jurisdiction to determine whether "extraordinary and compelling reasons" warrant a sentence reduction after consideration of sentencing factors under 18 U.S.C. §3553(a) and the sentencing Commission's policy statement on reduction of sentence in U.S.S.G. §1B1.13.

C.  Sentence Reduction authority under the First Step Act.

This Court has discretion to reduce the term of imprisonment imposed based on 18 U.S.C. §3582(c)(1)(A), which states in relevant part the Court "may reduce the term of imprisonment, after consideration of the factors set forth in section §3553(a) to the extent they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction." Pursuant to the requirement of 28 U.S.C. §994(t), as authorized by 28 U.S.C. §992(a)(2)(c)., Congress delegated the Sentencing Commission the authority "to describe what should be considered extraordinary and compelling reasons for sentence reduction, including a list of the criteria to be applied and a list of specific examples." Here, the examples of extraordinary and compelling reasons" include:

A. **Medical Condition of the Defendant**

  (ii). The defendant is --

  (I)     suffering from a serious mental or physical condition

  (II)    suffering from a functional or cognitive impairment, or

  (III)   is experiencing a serious deterioration in physical or mental health because of ageing process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

D. **Other Reasons** As determined by the Director of the Bureau of Prisons, there exist in the defendant's case an extraordinary and compelling reason other than or in combination with the reasons described in subdivision (a) through (c).

U.S.S.G. 1B1.13. See *United States v Marshall*, 2020 U.S. Dist. LEXIS 3616 (6TH Dist. 2020). The Sentencing Commission promulgated a policy statement that sets out the criteria for finding

an "extraordinary and compelling" reason. See *United States v. Cantu- Rivera*, 2019 U.S. Dist.

LEXIS 105271 (S.D. Houston 2019). The Bureau of Prisons is no longer the only authority that

can find whether a case involves "extraordinary and compelling reasons." The Court's exercise

of sentencing discretion based on extraordinary and compelling reasons should depend on the

Petitioner's current medical condition.

Numerous courts have concluded that the pandemic, in conjunction with an underlying

medical susceptibility and crowded prison conditions, provides extraordinary and compelling

reasons justifying compassionate release. See *United States v. Muniz*, 2020 WL 1540325 (E.D.

WIS. Mar. 30, 2020) (granting compassionate release to inmate with end stage renal disease,

diabetes and arterial hypertension and noting that "while the court is aware of the measures taken

by the Bureau of Prisons, new report's of the virus's spread in detention centers with the spread

in detention centers within the United States and beyond our borders in China and Iran

demonstrates the individuals housed within our prison systems nonetheless remain particularly

vulnerable to infection.): *United States v. Campagna*, 2020 WL 1489829 (S.D.N.Y. Mar 27,

2020) (holding that defendant's compromised immune system, taken in concert with the

COVID- 19 public health crisis, constitutes an extraordinary and compelling reason to modify to

defendant's sentence): *United States v. Jepsen*, 2020 WL 1640232 at *5 (D.Conn. Apr. 1, 2020)

(inmate who is immunocompromised and suffers from multiple chronic conditions demonstrated

"extraordinary and compelling" circumstances); *United States v. Resnick,* 2020 WL 1651508

(S.D.N.Y. Apr. 2, 2020) (inmate with diabetes and end state liver disease demonstrated

"extraordinary and compelling circumstances"); *United States v. Zuckerman*, 2020 WL 1659880

at *5 (S.D.N.Y. Apr. 3, 2020) (Zukerman's age combined with his diabetes, hypertension and

obesity satisfy the "extraordinary and compelling reasons' requirement); *United States v. White,*

7

00-30027-MGM (D. Mass. April,10, 2020) (granting compassionate release, waiving exhaustion

requirement, for 52 year old inmate being held at MDC Brooklyn with no significant underlying

health issues); see also Doug Berman, Sentencing Law and Policy. Additional COVID-19

influenced grants of federal sentence reductions-using-§3582(c)(1)(a)

.https://sentencing.typepad.com/sentencing_law_and_policy/2020/04/additinal-covid-influenced-

grants-of-sentence-reductions -using-3582cla.htm

(listingcasesgrantingcompassionatereleaserelatedtocovid-19).

### D.  Relevant Facts and Procedural History

The Petitioner satisfied the thirty day requirement for exhaustion of administrative

remedies under 18 U.S.C. §3583(c)(1)(A) allowing for a modification "upon motion of the

defendant after the defendant has fully exhausted all administrative rights to appeal a failure of

the Bureau of Prison to bring a motion on the defendant's behalf of the lapse of 30 days from the

receipt of such a request by the warden of the defendant's facility, whichever is earlier". 18

U.S.C. §3582 (c)(1)(A).

The Petitioner made his initial request for compassionate release on May 08, 2020 and

has not received the Warden's response. Exhibit A. *See United States v. Haney*, 2020

WL1821988 at *3(S.D.N.Y.) pr.13, 2020) (finding that the thirty-day waiting period is

waivable).[9]

---

[9] Many federal courts have now ruled that the exhaustion requirement contained in 18 U.S.C. § 3582(c) is not absolute, and it may be waived in certain extraordinary circumstances, such as the threat posed by COVID-19 pandemic. *United States v. Smith*, 12 CR 133 (JFK)2020 WL 1849748, at *2 (S.D.N.Y. Apr. 13, 2020); Haney, 2020 WL 1821988, at *4 ("in extraordinary circumstances now faced by prisoners as a result of the COVI-19 virus and its capacity to spread in swift and deadly fashion, the objective of meaningful and prompt judicial resolutions is clearly  best served by permitting Haney to seek relief before the 30-day period has elapsed); *United States v. Sawicz*, No. 08 Cr. 287 (ARR), 020 WL 1698732, at *4 (D. Conn. April 8, 2020)(excusing exhaustion requirement because "[e]ven a few weeks delay carries the risk of catastrophic health consequences" for prisoners in high rish group); *United States v. Zukerman*, No 16 CR. 194 (AT), 2020 WL 1659880, at *4 (S.D.N.Y. Apr. 3, 2020) (waiving exhaustion requirement, given the defendant's advance age, health conditions putting him in a high risk group for complications and death resulting from COVID-19, and fact that he was in a detention facility where

E.  Compassionate Release Standards

Title 18 U.S.C. §3582(c)(1)(A), further provides that a court may reduce a defendant's

term of imprisonment "after considering the factors set forth in Section 3553(a) to extent that

they are applicable" if the court finds that;

> Extraordinary and compelling reasons warrant such a reduction' or (ii) the defendant is at
>
> least 70 years of age, has served at least thirty years in prison, pursuant to a sentence
>
> imposed under Section 3559(c), for the offense or offenses for which the defendant is
>
> currently imprisoned, and determination has been made by the Director of the Bureau of
>
> Prisons that the defendant is not a danger to the safety of any other person or the
>
> community as provided under Section 3142(g): and that such a reduction is consistent
>
> with applicable policy statements issued by the Sentencing Commission. 18 U.S.C.
>
> §3582(c)(1)(A).

When considering the merits of a defendant's motion, the statue provides that courts must make

three separate categories of findings before granting a sentence reduction. First, a court must find

either that "extraordinary and compelling" reasons support sentence reduction, or that the

defendant is at least 70 years of age and meets further requirements. 3582(c)(1)(A)(i-ii). Second,

a court must find that any sentence reduction is consistent with applicable policy statements

issued by the Sentencing Commission. 18 U.S.C §3582(c)(1)(A). Lastly, a court must consider

the factors set forth in Section 3553(a) to the extent that they are applicable.

---

prisoners line in crowded conditions); *United States v. Perez,* No. 17 Cr. 179, 2020 WL 1546422, at *2 (S.D.N.Y. April 1, 2020) (waiving § 3582(c)(1)(A)'s exhaustion requirement where delay carried the risk of the venerable defendant contracting COVID-19); *United States v. Colvin,* No. 19 Cr. 179 2020 WL 1613943 at *2 (D.Conn. April 2, 2020) ( "[I]n light of the urgency of [d[efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [court waives the exhaustion requirement of Section 3582(c)(1)(A),"); *United States v. Powell,* 94 Cr. 316, ECF No.98 (D.D.C. Mar. 28, 2020)(waiving exhaustion under §3582(c)(1)(A) where the [c]ourt found that "requiring defendant to first seek relief through the [BOP] administrative process would be futile").

F. Argument

1. **Petitioner Has Established "Extraordinary and Compelling Reasons" that Warrant Compassionate Release.**

The court has a duty to protect the petitioner from the "terminal illness" of the virus. The Petitioner is an inmate who suffers from Neutropenia, irregular rapid heartbeat and shortness of breath. In addition, during June 2008, Petitioner had heart surgery at Baystate Medical Center in Springfield, MA. The Petitioner was hospitalized for approximately 48 hours and has a dime-sized scar on his chest as a result of the procedure. During the six years that the Petitioner has been living in FMC Devens prison, the Petitioner suffered from severe chest pain in which the Petitioner was taken to close by facility in Boston, MA, where they ran medical tests of his heart. The Petitioner continued to report shortness of breath. However, the Bureau of Prisons policy does not allow for continuous visits to heart specialist out of the FMC Devens prison facility and therefore, Petitioner could not receive the proper diagnoses and treatment for his heart and chest conditions. The Bureau of Prisons Medical Policy treats prisoners need for additional medical attention through a point system. For example, if the prisoner does not reach level 18, the prisoner cannot receive special treatment out of the facility. Thus, it is evident that the Petitioner's medical conditions was grave enough to permit medical attention outside of the prisons in-house medical facility.

Petitioner suffers from Neutropenia, resulting in "shortage white blood cells and weakened immune system."[10] Neutropenia exposes the Petitioner to a diminished capacity to defend against infections from bacteria's or a virus. Therefore, the Petitioner remains in imminent danger of

---

[10] https://www.cancer.net/coping-with-cancer/physical-emotional-and-social-effects-cancer/managing-physical-side-effects/neutropenia.

infection, illness and death from COVID-19. As of May 23, 2020, the COVID pandemic has infected well over 1.6 million people in the United States, resulting in over 99,000 deaths.[11] Currently, there is no cure for COVID-19 and the Bureau of Prisons cannot provide for the safety of the prisoners or slow down the spread of the disease by following the basic minimum safety precautions recommended by the Center for Diseases Control. The Petitioner's crime is not deserving of death or having the Bureau of Prisons place his life in danger.

The risk taken on the part of the Bureau of Prisons after the enactment of the CARES Act is not acceptable. If the Bureau of Prisons or the Court refuses to grant compassionate release under 18 U.S.C. §3582 (c)(1)(A) and U.S.S.C.§1B1.13(d) during this pandemic, there imposing a sentence of death on the Petitioner. Federal Medical Centers Devens prison, where the Petitioner is housed, has already reported multiple deaths from COVID-19 and there are 24 prisoners and two employees, *and counting* that have contracted the virus. The risk on the Petitioner's health and safety grows every minute the Petitioner remains in the dangerously infected prison facility. One death is too many if it could have been prevented and in this case the Petitioner's contraction of the virus and death can be prevented through the Court's grant of compassionate release.

The court in the *United States v. Castio*, 2020 U.S. Dist. LEXIS 52986(9TH DIST.2020) found the COVID-19 disease to be and extraordinary and compelling reason for a court to act. The virus has greatly jeopardized the health of all Americans. *United States v. Torosyan,* 2020 U.S. Dist. LEXIS 52861 (9th Dist.2020). This COVID-19 pandemic could not be reasonably foreseen by the Court at the time of sentencing. The pandemic has killed over 99,000 people at a rate of 10,000 people per week in the United Sates alone.[12]

---

[11] https://www.worldometers.info/coronavirus/country/us/

[12] https://www.worldometers.info/coronavirus/country/us/

*11*

Recognizing the risk of COVID-19 outbreaks in prisons, Congress, the President, and the Department of Justice have begun encouraging steps to release some prisoners to safer home environments. The coronavirus relief bill enacted on March 27 allows the Attorney General to expand the Bureau of Prisons ability to move prisoners to home confinement. *See* Coronavirus Aid, Relief and Economic Security (CARES) Act, Pub. L. No. 116-136, §12003(b)(2) (2020). This congressional action came after Attorney General William Barr sent a memo to the Director of the BOP recognizing that "there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in Bureau of Prisons facilities."[13]  Attorney General Barr accordingly requested that the Bureau of Prisons use its statutory authority to release certain inmates to home confinement.[14] While he also expressed confidence in the Bureau of Prison's "ability to keep inmates in our prisons as safe as possible from the pandemic sweeping across the globe," the situation has changed swiftly since he wrote the memo and the Bureau of Prison's reported COVID-19 cases have since tripled.

Petitioner's—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease present "extraordinary and compelling reasons" to reduce his sentence. Black's Law Dictionary defines "extraordinary" as "[b]eyond what is usual, customary, regular,

---

[13]  Memo. from Attorney Gen. William Barr to Director of BOP, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), at https://www.politico.com/f/?id=00000171-1826-d4a1-ad77-fda671420000.

[14]  Memo. from Attorney Gen. William Barr to Director of BOP, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), at https://www.politico.com/f/?id=00000171-1826-d4a1-ad77-fda671420000.

or common." *Extraordinary*, Black's Law Dictionary (11th ed. 2019).  It defines
"compelling need" as a "need so great that irreparable harm or injustice would result if
it is not met." *Compelling Need*, Black's Law Dictionary (11th ed. 2019). Petitioner has
shown extraordinary and compelling reasons to reduce his sentence. First, he suffers
from underlying health conditions that render him especially vulnerable to COVID-19.
Second, prison is a particularly dangerous place for Petitioner at this moment.  Third, he
has served more time then was recommended during his sentencing. The underlying
medical conditions making Petitioner "high risk" to contracting and dying from
COVID-19 alone should be reasons *alone* of extraordinary and compelling. However,
the above three listed reasons taken together, constitute even more extraordinary and
compelling reasons for reducing his sentence "[b]eyond what is usual, customary,
regular, or common," and reasons "so great that irreparable harm or injustice would
result if [the relief] is not [granted]." *Extraordinary*, Black's Law Dictionary (11th ed.
2019); *Compelling Need*, Black's Law Dictionary (11th ed. 2019).

2.  **After Considering the 18 U.S.C. §3553(a) Factors, Petitioners over 10 years of
    Incarceration Constitutes a Sentence Sufficient to Accomplish the Goals of
    Sentencing.**

The Guidelines provide the applicable policy statement with which the court must comply at
U.S.S.G. §1B1.13. The policy states:

> Upon motion for the Director of the Bureau of Prisons under 18 U.S.C. §3582 (c)(1)(A),
> the court may reduce a term of imprisonment (and may does not exceed the unserved
> portion of the original term of imprisonment) if, after considering the factors set forth in
> 18 U.S.C. §3553(a), to the extent that they are applicable, the court determines that

13

(1)(A) Extraordinary and compelling reasons warrant the reduction; or

(B) the defendant

      (i) is at least 70 years old; and

      (ii) has served at least 30 years in prison pursuant to a sentence imposed to a

      sentence imposed under 18 U.S.C. 3559 (c) for the offense or offenses for which

      the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as

provided in 18 U.S.C. §3142(g), and

(3) the reduction is consistent with this policy statement.

While the policy guidelines largely track the language contained at 18 U.S.C. §3582(c)(1)(A), it also adds an additional finding a court must take; it must find that the defendant is not a danger to the safety of any other person or to the community as provided by 18 U.S.C.§3142(g), which provides factors to be considered when determining whether a defendant should be allowed pretrial release. Those factors include the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Under the circumstances, the 10 year incarceration that the Petitioner served satisfies the purpose of sentencing. Under *Pepper v. United States,* 562 U.S. 476, 490-93 (2011), the Court can and must consider post events development under 18 U.S.C. §3553(a), which provides the "most up to date picture" of the defendant's history and characteristics and "sheds light on the likelihood that [Petitioner] will engage in future criminal conduct." *Id.* at 492. The Warden did not identify any disciplinary violations received by Petitioner as a reason for not granting

14

Compassionate Release. Here, the overriding factor under 18 U.S.C. §3553(a) that was not

present at the time of sentencing, is Petitioner's potentially deadly exposure to the COVID-19

virus while incarcerated.  Although the circumstances of the present offenses and Petitioner's

criminal history may have qualified him for the imposed sentence this Court originally imposed,

Petitioner's potential exposure to a deadly disease at the time of sentencing provided no

indication that he was likely to face a life-threatening illness because of his incarceration. The

current trend shows that the number of positive COVID-19 cases in the Bureau of Prisons is

vastly growing daily. The CDC has identified certain classes of people who are usually

susceptible to be overcome by the Coronavirus. As a general class of people, notwithstanding the

Petitioner have a weaken immune system, consists of those who cannot practice social distancing

and good personal hygiene. The World's health communities also advise people to wash

regularly wish alcohol- based hand sanitizer- an unauthorized commodity to all people in prison.

Additionally, when considering the statutes factors, this Court should note that the Petitioner

was convicted of a non-violent crime that is RICO conspiracy in violation of 18 U.S.C.

§1962(d), extortion conspiracy in violation of 18 U.S.C. §1951, and interstate travel in violation

of 18 U.S.C.§1952, and based on the conduct of which he was convicted, Petitioner faced 41 to

51 months imprisonment under the United States sentencing guidelines (The Federal Sentencing

Guidelines). Similarly, the probation department determined that the Petitioner faced a guideline

range of 78 to 97 months based on that "acquitted conduct" and sentenced the Petitioner

principally to 300 months (25 years) behind bars. The Petitioner has already served 10 years

behind bars. The Petitioner's Bureau of Prisons record has no violence in it. These factors weigh

in favor of finding that the Petitioner poses no danger to the safety of any person or the

community. Furthermore, the Petitioner is not a danger to the community during this pandemic

because he has a home to return to—where he can self-quarantine—and an adequate reentry

plan, as verified by the Probation Office.

### 3.   The Petitioners Post Incarceration Activities and Educational Efforts Have Greatly Reduced the Probability of Recidivism.

The Court must consider the factors provided by 18 U.S.C. §3553(a) to the extent that they

are applicable. 18 U.S.C. §3582(c)(1)(A), U.S.S.G. §1B1.12. See *United State v McGraw,*

No.202CR00018LJMCMM, 2019 WL 2059488 at 3 (S.D. IND May 9, 2019). Those factors

include, but are not limited to, the nature and circumstances of the offense, the history and

characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of

the offense, to promote respect for the law, and provide just punishment for the offense, to afford

adequate deterrence to criminal conduct, to protect the public from further crimes of the

defendant, and to provide the defendant with needed educational, or vocational training, medical

care, or other correctional treatment in the most effective manner, the kind of sentence avaible,

the need to avoid unwarranted sentence disparities among defendants with similar records who

have been guilty of similar conduct.

Prior to prison, Petitioner had reached the pinnacle of his professional career as an

entrepreneur. During his 10 year of incarceration, he has dedicated himself to the diligent intense

study of Sociology, literature, philosophy and American Jurisprudence. He has risen from among

the ranks of his peers and has become one of the most successful jailhouse lawyers the federal

prison system has ever known. He has helped hundreds of prisoners understand the laws and the

Constitution of the United States and draft legal documents to advocate for themselves.

The Petitioner has not let his term of imprisonment impact his drive and dignity. He has

been a model, highly productive inmate. In addition to adhering to the rules of Bureau of Prisons

and he has a good work history therein. He has taken and completed numerous vocational and correctional programs. See Exhibit C, Educational Transcript.

In summary, Petitioner is now 51 years old, has experienced a deep-seated personal change, has developed a love for helping his fellow man achieve their goals and as such does not pose a danger to any other person or the community. Petitioner has secured employment with the Italian Bakery Shop (owner and manager, Joe Santos, can be reached at (413) 231-8208) and they both currently await the moment when Petitioner will be released and will set forth on the path that will lead to his greatest potential.

If and when released, the Petitioner will live at 167 Kenmore Drive, Longmeadow, Massachusetts 01106. The Petitioner will live with his family, can be reached by phone at Antonio (413) 426-4461, Frank (413) 636-8959, AnnaMaria (413)246-6476. The Petitioner plans to conduct the 14-day quarantine at home. The Petitioner's home as a large, ranch- style home has enough space that would allow the petitioner's family to abide by the CDCD Six-foot distancing rule.

### G.  Administrative Remedies

The Petitioner has filed a request to the Warden of the Federal Medical Centers evens for compassionate release. The request has been denied. The 30-day lapse of time under 18 U.S.C. 3582(C)(1)(A) has Expired. See Exhibit A, Denial from Warden. Exhibit B, Dr. Joe Goldenson is a long-time court monitor with experience reviewing the adequacy of medical care provided by detention facilities. Dr. Goldenson reviewed declarations of several FMC Devens inmates as well as a letter submitted by the United States Attorney's Office and a letter from Dr. J.N.

Conclusion

Based on the foregoing, the Petitioner respectfully request and prays that his honorable

Court grants this Petitioner for compassionate release.

DATE 6    2    2020

RESPECTFULLY SUBMITTED

*Emilio Fusco*

EMILIO FUSCO
REG# 02689-748
FMC DEVENS
P.O.BOX 879
AYER, MA 01432

18

Certificate of Service

I, Emilio Fusco, herby certify that a copy of the foregoing was sent via first class mail, postage

prepaid using the United States Postal Service to the following address:

United States Attorney
One Street Andrew's Plaza
New York, New York

Declared under penalty of perjury, pursuant to 18 U.S.C. Section 1746.

Respectfully Submitted,

Emilio Fusco

Reg. NO. 02689-748

F.M.C. DEVENS

P.O. Box 879

Ayer, MA 01432

6/2/2020

19

DEV 5800.16
July 14, 2011
ATTACHMENT A

OUTGOING SPECIAL MAIL RECEIPT

| Name and Address of Person Receiving Special Mail | FMC Devens |
|---|---|
| Name  U.S. Attorney | |
| Address   One Street, Andrew's Plaza, | Enter Inmate Name, Register No., and Housing Unit Here: |
| New York, New York    10007 | Emilio Fusco  Reg# 02689-748 |
| City          State          Zip Code | S-B |

(Inmate Signature)  Emilio Fusco    6/2/, 2020

The following is to be completed by staff:

ENTER SIGNATURE, TITLE AND DATE OF STAFF MEMBER RECEIVING SPECIAL MAIL.

(Signature and Title)        (Date Special Mail Received from Inmate)

****Once this receipt is filled out by the inmate, and unit staff have signed and dated this receipt, the receipt and special mail will be forwarded by unit staff to the institutions outgoing mail box for further processing.***

"Special Mail" means correspondence sent to the following: President and Vice President of the United States, the U.S. Department of Justice (including the Bureau of Prisons), U.S. Attorneys Offices, Surgeon General, U.S. Public Health Service, Secretary of the Army, Navy, or Air Force, U.S. Courts (including U.S. Probation Officers), Members of the U.S. Congress, Embassies and Consulates, Governors, State Attorneys General, Prosecuting Attorneys, Directors of State Departments of Corrections, State Parole Commissioners, State Legislators, State Courts, State Probation Officers, other Federal and State law enforcement officers, attorneys, and representatives of the news media.]