FUSCO, Emilio
Reg. No. 02689-748
J-B Unit

This is in response to your request for Compassionate Release/Reduction in Sentence (RIS) consideration, received May 7, 2020, wherein you are requesting to be considered for RIS based on being medically debilitated.

A review of your medical record indicates your circumstances are not extraordinary or compelling. It has been determined that you do not have a deteriorating medical condition that would diminish your ability to function within a correctional setting.

You have a medical history of status post right inguinal hernia repair, cardiac ablation, internal hemorrhoids, colon polyps, mild neutropenia, iron deficient anemia and constipation. Your medical conditions are treatable and FMC Devens is able to manage your medical needs at this time.

Based on the recommendations and information provided you are not appropriate for RIS at this time. If you do not agree with this decision, you may appeal using the Administrative Remedy process at the institution level within twenty (20) calendar days of the receipt of this letter.

_____          _____
RADM S. Spaulding, Warden                                                Date

## FMC DEVENS
## COMPASSIONATE RELEASE NOTIFICATION FORM

FUSCO, Emilio
Reg. No. 02689-748

On this date, the above individual was informed (verbally and/or in writing) that his request for Compassionate Release (Program Statement 5050.50) was denied.

The above individual was explained the reasons for denial, how to appeal the decision (if applicable), how to reapply for Compassionate Release (if applicable), and understands the processing and current status of his Compassionate Release request, as well as any other pertinent information.

_____          6-2-2020
Name                                Date

_____
S. Rasmussen, LICSW
Clinical Social Worker
FMC Devens
Staff person

FEDERAL MEDICAL CENTER, DEVENS, MASSACHUSETTS
RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #1028252-F1

FUSCO, Emilio
Reg. No. 02689-748
J-B Unit

This is in response to your request for Administrative Remedy, received on June 19, 2020, in which you request to appeal the denial of your Compassionate Release/Reduction in Sentence (RIS) request.

Investigation of your complaint revealed the following: Your application for a Reduction in Sentence, received on May 7, 2020, was for consideration under Medical Debilitation. Pursuant to Program Statement 5050.50, Compassionate Release, page 5, section 3 (b), RIS consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is: 1) completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or 2) capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

Your medical records were reviewed and indicate that you have a medical history of status post right inguinal hernia repair, cardiac ablation, internal hemorrhoids, colon polyps, mild neutropenia, iron deficiency, and constipation. FMC Devens is able to be manage your medical needs and you are independent with your activities of daily living. In regards to your administrative remedy requesting consideration for a terminal illness, you have not been given a life expectancy of 18 months or less, nor do you have end of life indicators that would establish a prognosis of terminal. In view of the above information, your request for compassionate release under title 18 U.S.C. 3582 (c) or 4205 (g) is not warranted at this time.

With regard to the Coronavirus disease 2019 (COVID-19), the Bureau of Prisons is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence under title 18 U.S.C. 3582 (c) or 4205 (g).

Based on the above information, your request for Administrative Remedy is denied.

If you are not satisfied with this response, you may appeal to the Regional Director at: Bureau of Prisons, Northeast Regional Office, U.S. Custom House, 7th Floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania, 19106. Your appeal must be received in the Northeast Regional Office within 20 days of the date of this response.

_____            7/13/2020
Michael C. Underwood, Acting Warden       Date

FROM: 02689748
TO:
SUBJECT: Letter Warden Page 1-5
DATE: 08/11/2020 07:25:29 AM

Emilio Fusco
Reg. No. 02689-748
Federal Medical Center Devens                                  August 7, 2020
P.O. Box. 879
Ayer, MA 01432

Warden
FMC Devens
Federal Medical Center
P.O. Box 880
Ayer, MA 01432

Dear Warden:

I hope this letter finds you well and safe during these trying times. I am writing on my own behalf, Emilio Fusco Reg. 02689-748. I am currently 51 years old and about to turn 52 and I am currently serving a term of 300 months based on the concept of "acquitted conduct" as imposed in United States v. Fusco, No. 09-cr-1239 PKC(S.D. New York). My current anticipated release date is June 2031.

I am writing to you to concerning my significant efforts to obtain "compassionate release" pursuant to Bureau of Prison ("BOP") Program Statement 5050.50 Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. Sections 3582(c)(1)(A) and 4205(g).

Under Section 603(b) of the First Step Act of 2018 as amended by Title 18, Section 3582(c)(1), under the procedures for seeking compassionate release/reduction in sentence, an inmate may seek a compassionate release/reduction in sentence based on numerous circumstances.

Request Based on Extraordinary and Compelling Circumstances

COVID-19 CARES August 7, 2020, the Center for Disease Control ("CDC") reports a total of 5,094,,565 individuals in the United States who have tested positive for the novel COVID-19 disease, with a total of 163,465 deaths.*2}. As expected, the virus has now spread throughout the U.S. Prison system, including within the Federal Bureau of Prisons. No one could have anticipated how the conditions of confinement would change due to COVID-19, but it is beyond dispute that the change has increased the severity of Fusco's sentence The BOP has now reported 1,544 federal inmates and 548 BOP staff who have confirmed positive test results for COVID-19 nationwide.*3}. Tragically, there have been at least 110 federal inmate deaths 1 BOP Staff member death attributed to COVED-19. Id. {See Attached Works CITED.}

Individuals of any age with certain underlying conditions are at an elevated risk for serious illness or death due to COVID-19. According to the CDC, these include severe obesity; chronic kidney disease or undergoing dialysis; liver disease, moderate to severe asthma; or chronic lung disease; conditions that can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, prolonged use of corticosteroids and other immune weakening medications; diabetes; and serious heart conditions.*4] Most pertinent to the Mr. Fusco is the documented threat COVID-19 poses to those with Neutropenia resulting bone marrow, irregular heartbeat, shortness of breath. This Neutropenia exposes him to a diminished capacity to defend against infection from bacteria's or a virus. Therefore, Mr. Fusco remains in imminent danger of infection, illness and/or death from COVID-19.

Mr. Fusco is currently almost 52 years old and suffers from pre-existing medical conditions, including Neutropenia, neutrophil and irregular heartbeat, and chronic allergies thus increasing his risk of shortness of breath for cardiac-related and Neutrophil have a higher risk of getting serious infections complications from COVID-19.*1.){See Attached Works Cited}

Because of Mr. Fusco's numerous medical conditions, specifically conditions which put stress on his heartbeat and shortness of breath, he is classified as "high-risk" for serious illness from COVID-19. Contracting the virus would more than likely prove fatal for Mr. Fusco. Under these unprecedented circumstances, Mr. Fusco's respectfully submit that health conditions in combination with the current national emergency constitute extraordinary and compelling reasons warranting a reduction in

-1-

sentence.

As many district courts have noted post-First Step Act, "Congress has not specified the circumstances that qualify as 'extraordinary and compelling reasons' except to state that a reduction pursuant to this provision must be 'consistent with applicable policy statements issued by the Sentencing Commission." United States v. Bucci, No. CR 04-10194-WGY, 2019 WL 5075964, at *1 (D. Mass, Sept. 16, 2019).

However, after COVID-19's recent surge in the federal prison system, many district courts have found exponential increase of COVID-19 within the Bureau of Prisons constitutes extraordinary and compelling circumstances. See, e.g., United States v. Foster, No. 1:13-CR-324-02 (M.D. Pa. Apr. 3, 2020). ("The circumstances faced by our prison system during this highly contagious, potentially fatal global pandemic are unprecedented. It is no stretch to call this environment 'extraordinary and compelling,' and we all believe that, should we not reduce Defendant's sentence, Defendant has a high likelihood of contracting COVID-19 from which he would "not be expected to recover." USSG SS 1B1.13. No rationale is more compelling or extraordinary."); United States v. Colvin, No. 3:19-CR-179 (JBA), 2020 WL 1613943 (D. Conn. Apr. 2, 2020) ("She has diabetes, a 'serious ... medical condition,' which substantially increases her risk of severe illness if she contracts COVID-19... Defendant is 'unable to provide self-care within the environment of FDC Philadelphia in light of the ongoing and growing COVID-19 pandemic because she is unable to practice effective social distancing and hygiene to minimize her risk of exposure, and if she did develop complications, she would be unable to access her team of doctors at Bridgeport Hospital. In light of the expectation that the COVID-19 pandemic will continue to grow and spread over the next several weeks, the Court concludes that the risk faced by Defendant will be minimized by her immediate release to home, where she will quarantine herself."); United States v. Brannan, No. 4:15-CR-80-01 (S.D. Tx. Apr. 2, 2020) (emergency motion was granted to same day of filing for prisoner who had served 9 months of a 36-month sentence for fraud at FCI Oakdale and had not exhausted BOP remedies); Untied States v. Resnik, No. 1:12-CR-00152-CM (S.D.N.Y. 2020) ("Releasing a prisoner who is for all practical purposes deserving of compassionate release during normal times is all but mandated in the age of COVID-19"); United States v. Williams, No. 3:04-CR-95-MCR (N.D. Fla. Apr. 1, 2020) ("Williams' cardiovascular and renal conditions compromise his immune system, which, taken with his advanced age, put him at significant risk for even more severe and life threatening illness should he be exposed to COVID-19 while incarcerated ... Based on these facts, the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence."); and United States v. Campagna, 2020 WL 148929 (S.D.N.Y. Mar 27, 2020 (holding that defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to defendant's sentence) United States v. Jepsen, No. 3:19-CR-00073 (VLB), 2020 WL 1640232 (D. Conn. Apr. 1, 2020) ("Mr. Jepsen is in the unique position of having less than eight weeks left to serve on his sentence, he is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19, and the Government consents to his release. The Court finds that the totality of the circumstances specific to Mr. Jepsen constitute 'extraordinary and compelling' reasons to grant compassionate release."); United States v. White, 003-30027-MGM(D.Mass. April, 10, 2020) (granting compassionate release, waiving exhaustion requirement, for 52 years old inmate being held at MDC Brooklyn with no significant underlying health issue); see also Goug Berman, Sentencing Law and Police. Additional COVID-19 influenced grant of federal sentence reduction-using-Section 3582(c)(1)(A).

These failed practices were on display in a May 13, 2020, hearing where FMC Devens' warden, Stephen Spaulding, testified in the United States v.Pena, No.16-10236 MLW ( May 13, 2020 D. Mass) Under oath, Warden Spaulding acknowledged that he evaluated inmates' requests for deduction in sentence based on the same criteria he would have before the pandemic and did not consider COVID-19 in making his recommendation. In granting Pena's compassionate release request, Judge Wolf noted the Warden's rigid adherence to policies that contradict public health experts and the Department of Justice's own guidance was "utterly illogical."

Moreover, the sentencing factors under 18 U.S.C. 3553(a) support granting Petitioner a reduction in sentence during this unprecedented time. In Pepper v. United States 131, S. Ct. 1229, 1241 (2011), the Supreme Court emphasized the vital nature of post-sentence rehabilitation, stating that "there would seem to be no better evidence than a defendant's post incarceration conduct." Id. As he has been at Devens for six (6) years now, the Mr. Fusco has worked full time as an orderly in the Compound Cleaning Services department prison, and has completed hundreds of hours of education courses parent program, electronic law library training, weight management, disease prevention RPP1HLTGH, sport injury, including Health Education and more. Most recently, he has volunteered as a companion in the unit where he lives; He's in charge of pushing an inmate who is wheelchair-bound to pill-line insulin line, and to hospital appointments at 6:00 a.m -5:30 p.m. He spends time with elderly patients helping them with their wheelchairs etc., sitting with people who often have no one else in the word at their side.  And Mr. Fusco intends to participate to become a home health aide though the (CNA) certified nursing assistant program.

In addition, there are other considerations that come to bear upon a decision to grant Petitioner early release pursuant to 3582 (c)(1)(A). Compassionate release deeply implicates fundamental human rights principles. A report by Attorney General Eric

Holder in August, noted that four months earlier,*5} the Bureau of Prisons "expanded the medical criteria that will be considered for inmates seeking compassionate release."*6}.

Further, a fair and proportionate prison sentence may be disproportionally severe in light of changed circumstances: the current pandemic of COVID-19 as it pertains to Mr.Fusco's compromised health was not present at the time of his sentencing. Keeping a prisoner incarcerated past the point of serving a legitimate purpose, especially when continued incarceration risk an inmate's life, is inhumane and senseless. This is clearly the case with Mr. Fusco.

Further, releasing Mr. Fusco makes good fiscal sense to the Bureau. The DOJ has recently acknowledged that the ever-expanding federal prison population and the budget of nearly $6.2 billion that the BOP uses to keep federal prisoners locked up are unsustainable. According to the Department's inspector general, the growing and aging federal prison population consumes an ever-larger portion of the Department's budget, contributes to overcrowding and jeopardizes the safety and well-being of federal prisoners, and may force budget cuts to other DOJ components.*7}.

One of the most readily available, feasible, and sensible steps the BOP can make to reduce federal prison expenditures would be to ensure that compassionate release functions as Congress intended. Increasing the number of prisoners who are granted compassionate release would both markedly reduce the total federal prison population as well as free the BOP from unnecessary security costs of confining prisoners who post a scant risk of harm.

On August 3, 2017, U.S. Senator Brian Schatz, along with 11 U.S. Senators, extended their concerns to Dr. Thomas R. Kane, then-Acting Director of the Federal Bureau of Prisons, and then-Deputy Attorney General J. Rod Rosenstein about the BOP's actions concerning compassionate release. On of the concerns raised is that "Congress gave the Commission the authority to determine the conditions by which an individual in federal prison could be released for 'extraordinary and compelling reasons.'"8}. In the letter, it was also noted that individuals "released under compassionate release have a 3.5% recidivism rate, the lowest rate among all of those former incarcerated. Additionally, incarcerated individuals 50 years and older have a 15% re-arrest rate, compared to a 41% re-arrest rate for the general prison population."

Upon consideration of the relevant factors, I respectfully submit that I Fusco warrants Section 3582 consideration and a reduction of sentence pursuant to BOP Program Statement 5050.50.

See Attached Works Citied

Sincerely,

*Emilio Fusco*
Emilio Fusco