

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 28, 2022

**BY ECF AND EMAIL**
The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

> Re: *United States v. Emilio Fusco*, 09 Cr. 1239 (PKC)

Dear Judge Castel:

The Government respectfully submits this letter in opposition to defendant Emilio Fusco's renewed motion under 18 U.S.C. § 3582(c)(1)(A) for compassionate release. Dkt. No. 416 (the "Motion"). This Motion represents the defendant's third effort to obtain compassionate release from the Court over the past two years, and should be denied for three reasons: (i) the defendant has not exhausted his administrative remedies; (ii) the defendant has not demonstrated extraordinary and compelling circumstances justifying his release; and (iii) early release is not warranted under the Section 3553(a) factors.

**I. Background.**

**A. Offense Conduct**

As set forth in detail in the Government's sentencing memorandum (Dkt. No. 291) and the Presentence Report ("PSR") issued by the United States Probation Office on September 21, 2012, and as further summarized in the Government's memorandum in opposition to the defendant's first motion for compassionate release (Dkt. No. 394), between the early 1990s and his arrest in July 2010 in connection with the underlying offenses, Fusco was a professional criminal and member of the Genovese Crime Family. In the 1990s, Fusco became a trusted associate of the then-head of the faction of the Genovese Crime Family based in Springfield, Massachusetts. Fusco earned money from running loansharking, bookmaking, and "numbers" operations, as well as by dealing marijuana. The defendant was "made" into the Genovese Crime Family in the mid-to-late 1990s.

In late 2000, Fusco and a number of his associates were charged with racketeering, loansharking, illegal gambling, and money laundering in the District of Massachusetts. On June 4, 2003, the defendant pleaded guilty to racketeering conspiracy and money laundering conspiracy, and was sentenced to a term of 33 months' incarceration and three years' supervised release. Fusco

continued to conduct his illegal businesses and engage in operations of the Genovese Crime Family while charges were pending and he was on bail, before he surrendered to prison.

In approximately 2001, Arthur Nigro, a longtime member of the Genovese Crime Family who operated out of the Bronx, began to play a more active role in supervising operations out of Springfield. Nigro appointed Adolfo Bruno to run the Genovese Family in Springfield, and encouraged Bruno and other "soldiers" in Springfield, like Fusco, to become more active in extorting local business owners. In 2002 and 2003, Anthony Arillotta, who had caught the eye of Nigro, began to play a significant role in the Genovese Family's operations in Springfield. Along with his associates Ty and Fred Geas, Arillotta rose to prominence within the Springfield faction of the Genovese Crime Family. As Arillotta rose to prominence, Bruno began to fall out of favor with the bosses of the Genovese Crime Family in New York. Fusco became close with Arillotta and Ty and Fred Geas.

Shortly before Fusco surrendered to serve his prison sentence on his conviction in the District of Massachusetts, in the fall of 2003, Fusco participated in the murders of Adolfo Bruno and another individual named Gary Westerman. In early November 2003, the defendant and others murdered Gary Westerman, a longtime Genovese associate, whom they believed (correctly) was cooperating with law enforcement. Ty and Fred Geas lured Westerman to a remote house in rural Massachusetts, for what they told Westerman was a robbery. When Westerman arrived, he was shot by the Geases and then beaten over the head with shovels by the defendant and Arillotta. Fusco and his associates then buried Westerman's body in the woods behind the house.

Then, on November 23, 2003, Fusco and others murdered Bruno. The Bruno murder was triggered by an addendum to Fusco's PSR prepared in connection with his sentencing in the District of Massachusetts. The PSR addendum suggested that Bruno had told an FBI agent that Fusco was a "made" member of the Genovese Crime Family. Fusco showed the page of the PSR to other members of the Genovese Crime Family, and eventually the leaders of the Genovese Crime Family determined that Bruno should be killed. Fusco and others plotted Bruno's murder through the fall, eventually recruiting someone to shoot Bruno outside the Mt. Carmel Society social club in Springfield. Fusco relayed information to his associates that Bruno would be at the Mt. Carmel Society the evening of November 23, 2003, which ultimately led to Bruno's death.

The defendant surrendered to begin serving his prison sentence for the District of Massachusetts case on November 28, 2003. While in prison, Fusco continued to be involved in the Genovese Crime Family, and upon his release from prison in 2006, he immediately resumed his criminal activities, reasserting control over many of the rackets run by the Genovese Crime Family, as well as his marijuana dealing.

Eventually, Arillotta began cooperating with the FBI, providing information about, *inter alia*, the Westerman murder. In April 2010, the FBI began an evidence recovery effort at the house where Fusco and his associates had murdered Westerman. This operation was heavily publicized in the local media. Three days after the FBI began its operation, the defendant booked a ticket to Italy, leaving the United States five days later. He flew to Italy on April 13, 2010, and remained there until he was arrested by Italian police on July 29, 2010.

### B. Procedural History

On July 20, 2010, a grand jury in the Southern District of New York returned a 13-count superseding indictment charging the defendant and others with racketeering, murder, extortion, and loansharking crimes relating to their participation in the affairs of the Genovese Crime Family between 2001 and February 2010. Fusco was charged with racketeering conspiracy, substantive racketeering (including his participation in the murders of Bruno and Westerman as part of Fusco's pattern of racketeering), extortion conspiracy, extortion, and interstate travel in aid of racketeering. The defendant, who had fled to Italy, was arrested on July 29, 2010 and subsequently extradited to the United States.

Trial for Fusco's three co-defendants commenced on March 14, 2011 and ended on April 1, 2011, when all three were convicted on six of the seven counts with which they were charged, including racketeering, racketeering conspiracy, and the murders of Bruno and Westerman in furtherance of the charged racketeering enterprise. All three were sentenced to life imprisonment by this Court.

The defendant arrived in the Southern District of New York in May 2011. His trial commenced on April 16, 2012 and ended on May 2, 2012, when he was convicted by a jury on three counts: (1) Count One, which charged Fusco with conspiring to participate in the affairs of a racketeering enterprise, the Genovese Crime Family, from 2001 through February 2010, in violation of 18 U.S.C. § 1962(d); (2) Count Three, which charged Fusco with conspiring to extort the owner of various businesses in Springfield from 2002 through 2006, in violation of 18 U.S.C. §§ 1951 and 2; and (3) Count Five, which charged Fusco with interstate travel in aid of racketeering from 2002 through 2006, in violation of 18 U.S.C. §§ 1952 and 2. The defendant was acquitted on Count Two, the substantive racketeering account, because the jury found that the Government had not proven Fusco's participation in the Bruno and Westerman murders beyond a reasonable doubt. Fusco was also acquitted on Count Four, the substantive extortion count.

### C. The Defendant's Sentence

The defendant's sentencing proceeded over the course of two days, due to the parties' disagreement about the PSR, including Fusco's appropriate Sentencing Guidelines range. Specifically, the PSR prepared by Probation arrived at an offense level of 26 and Criminal History Category III, which made Fusco's Sentencing Guidelines range 78 to 97 months' imprisonment. The Government offered a different calculation of the Guidelines, which took into account Fusco's participation in the Bruno and Westerman murders, and arrived at an offense level of 46 and Criminal History Category III. *See generally* Dkt. No. 291. Under the Government's analysis, the Guidelines range was life imprisonment. The Government recommended the maximum sentence on each of the three counts of conviction, for a sentence of 45 years' imprisonment.

After presenting arguments to the Court regarding the PSR on October 10, 2012, the defendant was sentenced on October 11, 2012. The Court determined, *inter alia*, that the Government had proven by a preponderance of the evidence that Fusco had participated in

the conspiracies to murder Bruno and Westerman. Therefore, under the grouping analysis accepted by the Court, the defendant had an adjusted offense level of 45, and Criminal History Category III.

In imposing a sentence of 300 months' incarceration – 240 months' incarceration on the racketeering conspiracy and extortion conspiracy counts to run concurrently and 60 months' incarceration on the interstate travel count to run consecutively – the Court noted that Fusco's history and characteristics included the fact that "he willingly and freely elected to become a made member of the Genovese crime family. That was a decision that he made and . . . a life that he chose." (Sentencing Tr. at 106:16-18.) Fusco was also sentenced to three years' supervised release.

The defendant is currently incarcerated at FMC Devens in Massachusetts. His scheduled release date is December 13, 2031.

### D.    Defendant's Previous Attempts to Reduce His Sentence

The defendant appealed his conviction and sentence to the Second Circuit, which affirmed both. The Second Circuit expressly held that "the District Court's consideration of the murders at sentencing [did not] violate the requirement that 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *United States v. Fusco*, 560 F. App'x 43, 45 (2d Cir. 2014) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 49 (2000)). Fusco appealed that decision to the Supreme Court and was denied a writ of certiorari. *Fusco v. United States*, 135 S. Ct. 730 (2014).

Four years later, the defendant filed a motion before this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, in which he claimed that *United States v. Pimentel-Lopez*, 859 F.3d 1134 (9th Cir. 2016) and *Nelson v. Colorado*, 137 S. Ct. 1249 (2017) were intervening law that could serve as the basis for a departure from the Second Circuit's decision. *Fusco v. United States*, No. 09-CR-01239 (PKC), 2018 WL 6097874, at *7 (S.D.N.Y. Nov. 21, 2018). This Court rejected his motion. *Id*. He then was denied a certificate of appealability by the Second Circuit, *Fusco v. United States*, No. 19-141, 2019 WL 13127593 (2d Cir. June 28, 2019), as well as a writ of certiorari again by the Supreme Court. *Fusco v. United States*, 140 S. Ct. 462 (2019).

On September 13, 2020, the defendant filed his first motion for compassionate release, requesting to convert the remaining 178 months of his sentence to home confinement or reduce his sentence to time-served (122 months), pursuant to 18 U.S.C. § 3582(c)(1)(A). Alternatively, Fusco sought a recommendation from this Court to the Bureau of Prisons ("BOP") that Fusco be temporarily released pursuant to 18 U.S.C. § 3622 until the "creation and administration of a [coronavirus] vaccine." Dkt. No. 389 at 1. The primary basis of Fusco's Motion was that Fusco was at risk of contracting COVID-19 because he suffers from various medical conditions, including neutropenia and a heart condition, and he is 52 years old. *Id.* at 6-7. Moreover, Fusco argued that the 3553(a) factors favor his release, because "an overriding factor under § 3553(a) . . . was not present at the time of sentencing" – that is, Fusco's "potentially deadly exposure to the COVID-19 virus while incarcerated." *Id*. at 12. This Court rejected the motion in full after a

hearing on November 19, 2020, concluding that Fusco's medical condition, the conditions at Federal Medical Center Devens ("FMC Devens") where he is housed, and the section 3553(a) factors, considered both in isolation and in combination did not amount to "extraordinary and compelling reasons that warrant a sentence reduction in this case." Dkt. No. 404 at 21.

Shortly after, Fusco filed a notice of appeal (Dkt. No. 401) and a letter requesting that the Court reduce his sentence to time served (Dkt. No. 403). After a mandate was issued from the Second Circuit on Fusco's withdrawn appeal, this Court denied Fusco's letter motion on April 7, 2021. Dkt. No. 407.

Then on April 19, 2021, Fusco filed another motion for reconsideration of his motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) (Dkt. No. 408) and a supplemental letter in further support of that motion (Dkt. No. 409). His principal argument was that after contracting COVID-19 in December 2020, his health significantly worsened. Dkt. No. 408 at 2-3. At the outset, the Court noted that "[a]lthough Fusco moves for 'reconsideration,' because he has exhausted his administrative remedies for a second time, the Court will construe his submission as a second motion for sentence reduction under 3582(c)(1)." Dkt. No. 410 at 2. Then in ruling on Fusco's second motion for compassionate release, it considered that he was admitted to a local hospital, and transferred to the intensive care unit, where he was diagnosed with "multilobar pneumonia with ARDS [Acute Respiratory Distress Syndrome]" and required oxygen." *Id.* at 3. The Court further recognized that Fusco was obese; suffers from neutropenia, "a condition marked by 'a low count of a particular type of white blood cell which may make a person more prone to infection'"; was "diagnosed with Wolf-Parkinson-White syndrome, a heart condition that causes a rapid heartbeat; and "had a cardiac ablation in 2008." *Id.* at 4. Nonetheless, the Court "adhere[d] to its prior Order finding that '[Fusco] has received and can expect in the future to receive more than adequate medical attention' at FMC Devens." *Id.* at 4-5.

### E.    Fusco's Instant Motion

Fusco now files his third motion for compassionate release pursuant to § 3582(c)(1)(A). His principal argument is that the COVID-19 Omicron and BA.2 variants have increased his risk of contracting severe COVID-19, especially due to four medical conditions that he is diagnosed with: (1) "bronchiectasis," "a condition in which damage to airways causes [the lungs] to widen and become flabby and scarred"; (2) a compromised immune system caused by his use of corticosteroids following his earlier COVID-19 infection; (3) hypertension; and (4) obesity. Dkt. No. 416 at 6. He also argues that his conditions of confinement violate the Eighth Amendment, alleging that FMC-Devens "fail[ed] to conduct adequate testing & close contact isolation for inmates exposed to Omicron in violation of CDC protocols." *Id*. at 9. Further, he contends that this Court erred when calculating the length of his sentence. *Id*. at 16.

## II.   Discussion

### A.    Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed," except that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.* The Sentencing Commission, prior to the First Step Act's amendment of Section 3582, had promulgated a policy statement on compassionate release, U.S.S.G. § 1B1.13. The Second Circuit, however, has construed this policy statement as applicable only to compassionate release motions brought by the BOP, not those brought by defendants. *See United States v. Brooker*, 976 F.3d 228, 234-36 (2d Cir. 2020).

Thus, in instances such as this, involving a motion brought by the defendant rather than by the BOP, there are three prerequisites for granting a compassionate release motion. First, the defendant must have exhausted his administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant" a reduction of sentence. 18 U.S.C. § 3582(c)(1)(A)(i). And third, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). As the proponent of the motion, the defendant bears the burden of proving that he is entitled to the requested relief under Section 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction." (citing *Butler*)); *United States v. Givens*, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

### B. Application

The Government respectfully submits that the defendant's motion should be denied because the defendant has not exhausted his administrative remedies, the defendant has not established an extraordinary and compelling reason for compassionate release, and a reduction in sentence is not appropriate based on the factors set forth in 18 U.S.C. § 3553(a).

#### 1. *The Defendant has not Exhausted his Administrative Remedies*

Section 3582(c)(1)(A) provides that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights" or waited 30 days after transmitting his request to the warden. 18 U.S.C. § 3582(c)(1)(A). The statute thus imposes

Case 1:09-cr-01239-PKC   Document 422   Filed 07/28/22   Page 7 of 11

Page 7

a mandatory exhaustion requirement with no applicable exceptions. *See United States v. Ogarro*, No. 18 Cr. 373-9 (RJS), 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020) (stating that Section 3582's mandatory exhaustion requirement is "clear as day").

The defendant claims to have "complet[ed] his Administrative Remedies on 1/18/2022 (*see* Dkt. No. 416 at 3), but he does not include a copy of that purported request with his motion. Rather, the exhibit that the defendant includes with his motion shows that he requested compassionate release from the warden of FMC Devens on February 10, 2021 and his request was denied on March 11, 2021. In ruling on the defendant's second motion for compassionate release, the Court explicitly noted that he had exhausted his administrative remedies on those same dates. Dkt. No. 410 at 2. The defendant has offered no evidence that he has in fact exhausted his administrative remedies by raising the arguments contained in this motion since the Court ruled on his second motion for compassionate release on May 18. 2021. The BOP has records of the defendant appealing the denial of his request filed on February 10, 2021, the last of which was denied by the Administrator of National Inmate Appeals on January 18, 2022. *See* Exh. A at 1. But the defendant is required to raise the grounds for his current motion first to the Warden of FMC Devens, not simply appeal an old request that the Warden and this Court have denied previously. Accordingly, he has not exhausted his administrative remedies in filing his current motion, and it should therefore be denied on that basis.

2. *The Defendant has not Established an Extraordinary and Compelling Reason for Compassionate Release*

The defendant's medical records reveal that he received two doses of the COVID-19 Moderna vaccine on May 21, 2021 and June 15, 2021. Exh. B at 184. But despite his concern for contracting COVID-19 resulting from the new variants identified in his instant motion, Fusco refused to receive a COVID-19 Booster. In declining the vaccine on December 30, 2021, the defendant simply offered as the reason: "I don't want it." Exh. C at 111. "An inmate's risk of COVID-19 cannot justify compassionate release absent an inability 'to receive or benefit from a vaccine,'" *United States v. Clemons*, No. 21-2440, 2022 WL 1436801 (7th Cir. May 6, 2022) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). Accordingly, "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an extraordinary and compelling reason for immediate release. The same holds true for inmates who refuse a booster." *United States v. Arroyo*, No. 05-CR-40028-JPG, 2022 WL 2220908, at *3 (S.D. Illinois June 21, 2022) (internal quotation marks omitted) (citations omitted) (citing *Clemons*, 2022 WL 1436801, at *2.). *See also United States v. Darby*, No. CR 13-631 (KM), 2022 WL 1423089, at *7 (D.N.J. May 5, 2022) (There is . . . reason to be skeptical of a prisoner who claims to fear for his life, yet refuses to take routine measures to protect himself against COVID-19 infection."); *United States v. Valencia-Cortez*, No. 16CR0730-H, 2022 WL 36513, at *5 (S.D. Cal. Jan. 3, 2022) ("The Defendant is free to request a booster vaccine dose in order to increase his protection from the COVID-19 variants.") According to the CDC, "People are protected best from severe COVID-19 illness when they stay up to date with their COVID-19 vaccines, which includes getting all recommended boosters when eligible." CDC, *COVID-19 Booster Shots* (July 20, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/booster-shot.html. Fusco's voluntary refusal to stay current in his vaccination status severely undermines

his argument that his risk of contracting the COVID-19 virus constitutes an "extraordinary and compelling" reason justifying his release.

To meet this burden, the defendant points to four main health conditions—mild bronchiectasis, a compromised immune system caused by the use of Corticosteroids, hypertension, and obesity—as potential extraordinary and compelling reasons justifying release given the spread of Omicron and other variants of COVID-19. *See* Dkt. No. 416, at 6. None of these conditions, either alone or in combination with one another, constitutes a "serious" health condition that "substantially diminishes the ability of Fusco to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, Application Note 1.

Fusco's mild case of bronchiectasis does not constitute an extraordinary and compelling reason for compassionate release. Fusco's last check-up records his oxygen saturation levels at 97%, well within the normal range for oxygen intake. Exh. C at 1. He does not have "a serious condition" as his most recent pulmonary evaluation has reported his respiratory activity to be "within normal limits," even with some "shortness of breath." Exh. C at 4. And, as this Court has previously recognized, he has received adequate "medical attention from a pulmonary medicine specialist as he recovered" from COVID-19, which remains available to him at his request. Dkt. No. 416 at 5. Also, as recently as June 1, 2022, he stated that he "exercise[s] daily," demonstrating that any lung damage he experienced as a result of his first COVID-19 infection has improved to the point where he is able to engage in frequent exercise. Exh. C at 108.

Further, while the CDC recognizes that "long-term use[]" of corticosteroids "can result in secondary or acquired immunodeficiency," Fusco's medical records contain no evidence that he is in fact immunocompromised. CDC, *People with Certain Medical Conditions* (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. He has not even attempted to demonstrate that showing. Instead, all his medical records confirm is that he has been prescribed two inhaler-administered corticosteroids as treatment for his shortness of breath. Exh. C at 5-6. Further, courts in this District have frequently denied motions of compassionate release that cite the use of corticosteroids as an extraordinary and compelling reason, especially when the defendant has not demonstrated that that he was in fact immunocompromised. *See United States v. Davidson*, No. 15 CR 288 (RMB), 2022 WL 484829, at *3 (S.D.N.Y. Feb. 17, 2022); *United States v. Walden*, No. 96-CR-0962 (LAK), 2020 WL 7870670, at *3 (S.D.N.Y. Dec. 31, 2020); *United States v. Saleh*, No. 93CR181, 2020 WL 3839626, at *3 n. 4 (S.D.N.Y. July 8, 2020). Moreover, the CDC specifically suggests for patients who are moderately or severely immunocompromised that "you are protected best when you stay up to date with your COVID-19 vaccines." CDC, *COVID-19 Vaccines for Moderately to Severely Immunocompromised People* (July 20, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/immuno.html. Yet the defendant has voluntarily refused the best preventive treatment available to him in refusing to receive a COVID-19 Booster, stating simply that he "[doesn't] want it."

The CDC has also recognized that hypertension may put an individual at higher risk for developing complications from COVID-19. CDC, *Underlying Medical Conditions* (June 15, 2022) https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. However, the CDC does not have conclusive evidence regarding the effects of hypertension on

COVID-19 patients. CDC, *Evidence for Conditions that Increase the Risk of Severe Illness* (June 15, 2022) https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/underlying-evidence-table.html. Instead, it has placed hypertension in a "mixed evidence" and "inconclusive" category. Given the inconsistent evidence, "no firm conclusions" can be drawn about its effect on the disease. *Id.* Accordingly, courts in this District have repeatedly denied motions that cite hypertension as contributing to extraordinary and compelling reasons for compassionate release, especially when managed by medication. *See United States v. Rodriguez*, No. 11 CR. 755 (JFK), 2022 WL 2801009, at *1 (S.D.N.Y. July 18, 2022); *United States v. Israilov*, No. 17 CR 262 (LGS), 2021 WL 861418, at *2 (S.D.N.Y. Mar. 8, 2021); *United States v. Mood*, No. 19 CR 113 (VB), 2020 WL 3256333 (S.D.N.Y. June 16, 2020). Moreover, the defendant's medical records demonstrate that he is receiving consistent care for his hypertension including regular prescriptions for blood pressure management medicines, which have stabilized his blood pressure. Exh. C at 17-18.

Finally, this Court has previously concluded that the defendant's obesity, alone or in combination with other factors, did not constitute an extraordinary and compelling reason for his release. Dkt. No. 410 at 4. Fusco's motion defines his condition as Class 1 obesity, the lowest severity of obesity. *See* CDC, *Defining Adult Overweight & Obesity* (June 3, 2022), https://www.cdc.gov/obesity/basics/adult-defining.html#:~:text=Obesity%20is%20frequently%20subdivided%20into,BMI%20of%2040%20or%20higher. Fusco has also recently been prescribed an obesity intervention drug, Ozempic, and has been treated to address his elevated weight. Exh. C at 1-2. While the risk of the most severe forms of Covid-19 "increases sharply with elevated BMI," courts in this district have routinely denied compassionate release motions where the defendant was obese and suffered from another comorbidity. *See United States v. Brown*, No. 1:18-CR-00339-PAC-3, 2021 WL 5233506, at *3 (S.D.N.Y. Nov. 10, 2021) (denying compassionate release motion where defendant was diagnoses with high blood pressure, sleep apnea, prior heart problems, and obesity); *United States v. Morel*, No. 10-CR-798 (PAC), 2021 WL 2821107, at *1 (S.D.N.Y. July 7, 2021) (motion for compassionate release denied where fully vaccinated defendant had hypertension, Lyme disease, high cholesterol, and obesity); *United States v. Johnson*, No. 94-CR-631 (PGG), 2021 WL 640054, at *5 (S.D.N.Y. Feb. 18, 2021) (motion for compassionate release denied where obese defendant, with a BMI between 31 and 33, had received a first vaccine dose and was expected to receive another in weeks).

3. *The 3353(a) Factors Counsel Against Compassionate Release*

Even if Fusco could demonstrate extraordinary and compelling reasons, the 3553(a) factors counsel against compassionate release. *See, e.g., United States v. Monsanto Lopez*, No. 16 CR. 643-1 (NRB), 2020 WL 2555305, at *1 (S.D.N.Y. May 20, 2020) (even if defendant could show extraordinary and compelling circumstances, Section 3553(a) factors required denial); *United States v. Garcia*, No. 16-CR-719-2 (RJS), 2020 WL 2539078, at *2 (S.D.N.Y. May 19, 2020) (same); *United States v. Reese*, No. 12 CR 629 (VM), 2020 WL 2554381, at *2 (S.D.N.Y. May 20, 2020) (same). This Court has twice recognized that the 3553(a) factors do not favor Fusco's release including that Fusco is "not serving a sentence for conduct committed at an immature age," conducted his crimes "over an almost ten-year period," previously "served

a prior sentence for racketeering conspiracy and money laundering conspiracy," and has significant time left to serve on his sentence. Dkt. No. 410 at 6.

As set forth above, the conduct for which Fusco was responsible included Fusco's participation in two murders, as well as decades of criminal activity on behalf of the Genovese Crime Family, including extortion, loansharking, illegal gambling, and marijuana dealing. Indeed, Fusco devoted his adult life to working for the Genovese Crime Family, a criminal enterprise dedicated to the commission of crimes to enrich its members through fear, intimidation, and violence. Even Fusco's conviction in 2003 did nothing to deter Fusco from returning to his life of crime. Fusco's conduct – including commission of the underlying offenses while he was on some form of court supervision or term of incarceration – shows his pervasive devotion to a life of crime, his lack of remorse, and his demonstrated ability and intention to continue to commit crimes, even while under court supervision. The sentence imposed by the Court accurately captures the nature and circumstances of Fusco and his crimes, as well as the extent and seriousness of Fusco's criminality.

Fusco also raises several challenges that seek to reduce his sentence by attacking the validity of his underlying conviction. In *United States v. Orena*, 37 F.4th 58, 59 (2d Cir. 2022), the Second Circuit held that "when considering a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), a district court does not have discretion to consider new evidence proffered for the purpose of attacking the validity of the underlying conviction in its balancing of the 18 U.S.C. § 3553(a) factors." Put somewhat more generally, "arguments challenging the validity of an underlying conviction cannot be raised in a § 3582 motion as part of the § 3553(a) sentencing factors." *Id*. at 62. This is so because "[f]acts and arguments that purport to undermine the validity of a federal conviction must be brought on direct appeal or pursuant to 28 U.S.C. § 2255 or § 2241." *Id*. at 59. Accordingly, Fusco cannot challenge the grounds for his conviction as part of his § 3582(c)(1)(A) motion. In fact, he has already filed and unsuccessfully appealed the denial of a § 2255 motion before this Court. *Fusco*, 2019 WL 13127593, *denying certificate of appealability*, 2018 WL 6097874.

The Government respectfully submits that the Court's consideration of the seriousness of Fusco's conduct, Fusco's criminal history, and the need for deterrence at the time of sentencing has not changed – and should not change – due to the pandemic. In fact, Fusco's current sentence not only reflects the seriousness of his offense and his criminal history, but it also takes into account the deterrent effect on Fusco from committing additional crimes in the future and protects the public from further crimes of Fusco. Accordingly, consideration of the 3553(a) factors compel denial of this motion.

**III.** <u>**Conclusion**</u>

    For these reasons, the Government respectfully requests that the Court deny the defendant's Motion.

                                 Respectfully submitted,

                                   DAMIAN WILLIAMS
                                 United States Attorney

By:                       _____
                                 Jeffrey W. Coyle
                                 Assistant United States Attorney
                                 Southern District of New York
                                 (212) 637-2437
                                 Jeffrey.Coyle@usdoj.gov